*In re* MARRIAGE OF PAULETTE SLATE, Petitioner, and FREDDIE SLATE, Respondent (Wilma Wilson, Respondent-Appellee).
First District (3rd Division) No. 1—88—1584

Opinion filed March 22, 1989.

Michael T. Tristano, of Family Law Associates, of Chicago, for appellant.

Tim Wakenshaw, Assistant Attorney General, of Seattle, Washington, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Paulette Slate, formerly a resident of the State of Washington and now living in Illinois, had her marriage dissolved in Illinois and has sought a custody determination in the circuit court of Cook County pursuant to the Uniform Child Custody Jurisdiction Act

(Ill. Rev. Stat. 1987, ch. 40, pars. 2101 through 2126) (UCCJA), since respondent, the State of Washington, had previously appointed additional respondent, Wilma Wilson, a paternal aunt residing in Illinois, as the legal guardian of the three children. The trial court here ruled that Washington retained jurisdiction under the Interstate Compact on the Placement of Children (Ill. Rev. Stat. 1987, ch. 23, pars. 2601 through 2609), and declined to exercise jurisdiction in Illinois of the custody matter. Petitioner appeals.

The record reveals the following facts. Petitioner was married on October 21, 1980, to Freddie State in Cook County, Illinois. His whereabouts are unknown. They had three children. LaTina was born on May 27, 1978, Althea on June 22, 1980, and Marguerite on September 1, 1981. The family moved to Washington, where Freddie was stationed in the Navy.

On July 8, 1982, dependency petitions were filed in Washington alleging that the mother's mental health and father's unavailability due to military service resulted in the children's dependency. During 1982 and 1983, the Washington Department of Social and Health Services (DSHS) filed reports with the Washington court describing the mother's limited progress and inability to care for the children. Several hearings held in Washington courts determined the continued dependency of the children, who lived in Washington foster homes and sporadically visited with their parents.

On August 3, 1983, petitioner returned to Chicago to live with her mother. On August 15, 1983, the Washington DSHS asked the Illinois Department of Children and Family Services (DCFS) to conduct a home study on Wilson and another relative, whose names were submitted to Illinois on the interstate compact applications, and recommend whether or not the children could be placed in one of their homes. In early September 1983 the father received an administrative discharge from the Navy.

In November 1983, social studies were forwarded to Illinois. Problems between the two agencies regarding the home studies and recommendation for placement delayed plans. The Illinois worker was unable to provide the Washington worker with an exact date as to when they could receive the required reports. The Washington agency reported to the Washington court: "Consequently, we are unable to respond and make any recommendations for the court to consider, regarding sending the children there."

A February 16, 1984, report stated:

"The issue still needing resolution in November was financial support for Ms. Wilson. Because of financial problems in Cook

County (Chicago), Aid to Dependent Children support was insufficient to meet their needs. In addition, Cook County would not supply medical coupons for children who are under the jurisdiction of another state. The only solution available was to license Ms. Wilson as a foster parent, with foster care payments and medical coupons to be paid by the State of Washington. *** Supervision of the placement will be performed by the [Illinois] Department of Children and Family Services in Cook County."

On February 26, 1984, the children returned to Chicago and were placed with Wilson. On March 21, 1984, the Washington court found the original reasons for the removal of the children continued to exist. Supervision of the Illinois placement was to occur through the DCFS.

On August 1, 1984, the Illinois DCFS reported to the Washington DSHS that the children were doing well with Wilson. The report included information regarding petitioner's visits with the children, requests for maternal grandparent visitation, and recommendations.

On January 31, 1985, the Illinois DCFS filed a report with the Washington DSHS indicating that the 3-, 4½- and 6-year-old girls were doing well in the Wilson home. The mother attended therapy sporadically. She visited with the children several times or would call on the day of the visit and cancel. At times, petitioner indicated she was not willing to visit the children and was afraid to leave her home. Wilson was interested in obtaining guardianship, but would require financial assistance. The Illinois agency stated it agreed that Wilson should be appointed as guardian. In February 1985, the Washington DSHS reported to the Washington court that numerous Illinois services were being provided for petitioner "to help her stabilize, all without any measure of success. The pattern continues to be as it was, when she lived in Washington State, i.e., hospitalization, with medication and psychotherapy, with some limited stability during those times. This followed by Mrs. Slate terminating the medication and psychotherapy with subsequent severe deterioration." The Washington agency recommended that "[a]s a result of Mrs. Slate's severe ongoing emotional and psychological problems with Mr. Slate's lack of interest in his children, we believe the children can best be served by permanent guardianship with their aunt, Mrs. Wilma Wilson." DSHS noted that petitioner had "made no contact with either the children or this office."

On March 28, 1985, the Washington court entered an order appointing Wilson as guardian until each child reached 18 years of age, or until further order of the Washington court. The frequency of visi-

tation between the children and their parents was to be at the discretion of Wilson and to be supervised by the Illinois DCFS. The Washington DSHS was designated as the agency to supervise the guardianship, "and shall supervise in the following manner: through interstate compact procedures with the Department of Children and Family Services of the State of Illinois."

Since the entry of the guardianship order, no dependency review hearings have been conducted by the Washington court. Continued supervision has occurred through DSHS. From February 1985 through March 30, 1988, Wilson has communicated with the Washington DSHS regarding the children's status and stability. Washington has continued to financially support the children.

All three children attend Illinois schools. Marguerite attends a special education school in the South Metropolitan Association Early Childhood Program in Homewood-Flossmoor, Illinois. The record reveals numerous reports and materials documenting her progress in correcting speech/language delays.

On December 3, 1987, the Illinois court entered a judgment for dissolution of marriage and reserved the questions of child custody, visitation, child support and maintenance. On February 22, 1988, petitioner moved for a determination of custody. On April 25, 1988, the State of Washington filed a motion stating that the court should dismiss petitioner's motion for an order granting custody; asking that the court direct petitioner to seek any custody or placement change through the Washington courts in a termination of guardianship proceeding; asking that should the court enter custody to the mother the guardianship should remain in full force; and asking in the alternative that the court grant custody to Wilson. The State of Washington attached an affidavit of Michael T. Mitchell, assistant Attorney General for the State of Washington, along with the Washington records.

On April 26, 1988, the Illinois court entered an order finding that the Interstate Compact on the Placement of Children (ICPC) should be strictly construed; finding that Washington has provided financial assistance since 1982 and had periodically reviewed the case since 1982; and concluding that Washington retains jurisdiction in regard to the custody, pursuant to the ICPC.

The State of Washington maintains that the ICPC and the UCCJA permit the Illinois trial court to decline jurisdiction if there are significant contacts with Washington. Washington concedes that Illinois is the "home state" under the UCCJA. (Ill. Rev. Stat. 1987, ch. 40, par. 2103.04 (State where child has lived for at least six consecutive months prior to the time involved).) Washington correctly cites *In re*

*Marriage of Levy* (1982), 105 Ill. App. 3d 355, 434 N.E.2d 400, for the proposition that the interest of the child is served when the forum has optimum access to the relevant evidence about the child and the family. There must be maximum rather than minimum contact with the State. Washington argues merely that the Illinois court had the discretion to decline to exercise jurisdiction.

Under the UCCJA, jurisdiction refers not to the due process limitations of potential subject matter or personal jurisdiction, but instead to the legislature's discretionary limitation upon the exercise of existing jurisdiction. (*Siegel v. Siegel* (1981), 84 Ill. 2d 212, 417 N.E.2d 1312.) Thus, the Act permits some discretion in the trial court's determination of its jurisdiction to ensure that litigation takes place in the forum where the ties between the State and the child and his family are the closest. *In re Marriage of Kitchen* (1984), 126 Ill. App. 3d 192, 467 N.E.2d 344.

■ The purpose of the UCCJA is to assure that the litigation regarding child custody takes place in the State with which the child and his family have the "closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state." Ill. Rev. Stat. 1987, ch. 40, par. 2101.

The overall purpose of the ICPC is to facilitate the cooperation between States for the interstate placement of children. Ill. Rev. Stat. 1987, ch. 23, par. 2601.

Under the UCCJA, Illinois has jurisdiction to make an initial or modified child custody determination if it is the home State; or it is in the best interest of the child because the child and at least one parent have a "significant connection with" Illinois and there is available in Illinois "substantial evidence concerning the child's present or future care, protection, training, and personal relationships"; or the child is physically present in Illinois. (Ill. Rev. Stat. 1987, ch. 40, par. 2104(a).) Furthermore, under section 8 of the UCCJA, Illinois may decline jurisdiction if it finds that it is an inconvenient forum because, *e.g.*, another State was recently the home State; another State has a closer connection; or substantial evidence is more readily available there. Ill. Rev. Stat. 1987, ch. 40, pars. 2108(a), (c).

■ In the present case, Illinois should exercise jurisdiction to make a custody determination. The children moved to Illinois four years ago. Both parents are from Illinois. The petitioner, the parents' extended families, the three children, and the children's guardian all live in Illinois. Any relevant information about petitioner is in Illinois.

In February 1985, the Washington agency wrote that it was no longer in contact with petitioner. All of petitioner's contacts are in Illinois, including her mother, with whom she resides; the DCFS worker with whom she meets; her psychiatrists; her job; her Red Cross caseworker; and her attorney.

Illinois holds the relevant school records, special education records for Marguerite, medical records, friends, and the maternal and paternal relatives of the children. All home studies in the last four years have been performed by Illinois agencies. All witnesses and evidence regarding custody or visitation are in Illinois. It makes little sense to force petitioner, the children and their guardian to travel to Washington, or even to communicate through mail and telephone contact with Washington agencies, courts, attorneys, social workers and other professionals involved in making a custody decision.

Clearly, Illinois has superior access to relevant information on these children. Illinois has a closer connection with the children and everyone in their family interested in the custody action. Substantial evidence, in fact *all* the evidence, about the children's present and future care, protection, training and personal relationship is in Illinois. (Ill. Rev. Stat. 1987, ch. 40, par. 2104.) Illinois is not an inconvenient forum for any party involved in the custody determination. Washington was not recently the children's home State, and the records, history and paperwork in Washington can easily be transferred to Illinois. (See Ill. Rev. Stat. 1987, ch. 40, par. 2108.) In that regard, petitioner's counsel assured this court, at oral argument, that petitioner will offer no objection to the introduction into evidence of any Washington records in an Illinois hearing.

In the end, we must adhere to the guiding principle of the children's best interests, which persuades us that the forum with the greater access to relevant evidence about their future care is in Illinois. (See *In re Marriage of Weinstein* (1980), 87 Ill. App. 3d 101, 408 N.E.2d 952.) Illinois is the most appropriate forum to litigate any possible alteration in custody.

Washington urges that it should retain jurisdiction because "the past, current and cohesive whole of the critical information" is in Washington. The legislature directs us, however, to look at the present and future circumstances, not merely at what occurred during the period when the children were in foster care in Washington. We find that the trial court abused its discretion in declining to exercise jurisdiction in the custody matter.

In holding that Illinois should exercise jurisdiction, we emphasize that we do not intend to indicate that Wilson's guardianship estab-

lished by Washington should be destroyed. The best interests of the three children are paramount. The documents before this court indicate that the children are doing well and have lived in a stable home for four years. On remand, the Illinois trial court must consider any relevant evidence offered in the custody hearing, and this opinion is not meant to usurp the trial court's role in that proceeding.

In view of our holding, we need not address petitioner's other contentions.

For the foregoing reasons, the judgment of the circuit court of Cook County, declining the exercise of jurisdiction in deference to the courts of Washington, is reversed, and the cause is remanded for further proceedings consistent with the holdings contained herein.

Reversed and remanded.

RIZZI and WHITE, JJ., concur.