581 A.2d 659

**In re ADOPTION OF K.S.**

**Appeal of T.P.D. Natural Father of K.S.**

Superior Court of Pennsylvania.

Argued Sept. 5, 1990.

Filed Oct. 25, 1990.

Mark R. Ashton, Paoli, for appellant.

George A. Priestley, Warminster, for participating party.

Kenneth R. Williams, Doylestown, for Golden Cradle, participating party.

Diane D. Welsh, Norristown, for participating party.

Before OLSZEWSKI, DEL SOLE and HUDOCK, JJ.

DEL SOLE, Judge:

This is an appeal from a trial court order declining jurisdiction on forum non conveniens grounds and transferring the underlying custody/visitation action to the courts of the state of Delaware.

As noted by the trial court "the complex and tragic facts surrounding this case were detailed in *In Re: Adoption of Stunkard,*" 380 Pa.Super. 107, 551 A.2d 253 (1988) wherein this court affirmed a decision refusing to terminate Appellant's parental rights. For purposes of this appeal it is necessary to recount some of the relevant facts.

The child, who is the subject of the custody dispute, was born on November 15, 1986 in a Philadelphia hospital to a

young woman who was a resident of Delaware. The child's birth mother, without objection from the natural father, who was also a Delaware resident, placed the child for adoption with Golden Cradle, an adoption agency which at that time maintained its principal office in Montgomery County, Pennsylvania. Three days after her birth Golden Cradle placed the child with her pre-adoptive parents, who along with the child traveled back to their home in Delaware where they continue to reside.

Golden Cradle initiated proceedings to secure voluntary relinquishment of parental rights. This action was filed in Montgomery County in accordance with 23 Pa.C.S.A. § 2302(2) which provides that such proceedings may be brought in the court of the county "in which is located an office of an agency having custody of the adoptee or in the county where the agency having placed the adoptee is located." A decree entered on January 8, 1987 terminated the mother's rights and awarded legal custody of the child to Golden Cradle in anticipation of her adoption. Immediately after the court entered the decree terminating the birth mother's rights, the pre-adoptive parents filed a report of intention to adopt the child. Two months later, Appellant, the biological father, filed a petition for custody or visitation of the child. Golden Cradle responded by filing a petition to involuntarily terminate his parental rights. Appellant's request for custody was stayed pending the outcome of the involuntary termination hearing. Also held in abeyance pending the outcome of the involuntary termination hearing was the birth mother's request to have vacated the decree terminating her rights. Although the birth mother still strongly favored the adoption of the child, she filed this request reasoning that if the adoption should fail and the pre-adoptive parents were not awarded custody she wished to seek custody over the natural father.

Golden Cradle's petition for the involuntary termination of Appellant's parental rights was denied, and this decision was affirmed by the Superior Court. *See: In re Adoption of Stunkard, supra.* A further request for allowance of

appeal to the Pennsylvania Supreme Court was also unsuccessful. *In re Adoption of Stunkard,* 522 Pa. 597, 562 A.2d 321 (1989).

After the conclusion of the appeal process which foreclosed the child's adoption, the orphans' court scheduled hearings on the outstanding petitions. The court decided to initially consider the birth mother's rights before proceeding further. In September of 1987 the court vacated the order terminating the birth mother's parental rights, and the natural father filed an emergency petition seeking custody and/or visitation. Because the natural parents' rights were not terminated and adoption under these circumstances was not possible, the orphans' court, which has jurisdiction of custody matters as they relate to an adoption by virtue of 20 Pa.C.S.A. § 711, transferred the custody/visitation matter to the family division for disposition.

The family court, which held a conference and ordered the case listed for a full custody hearing, was presented with a motion to transfer jurisdiction to the state of Delaware pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), 42 Pa.C.S.A. § 5341 *et seq.* This motion, filed by the pre-adoptive parents, was joined in by the birth mother and Golden Cradle. The court's decision to transfer jurisdiction to Delaware as the more appropriate forum is challenged by Appellant in this appeal.

Appellant objects to the court decision on two bases. He asserts that the pre-adoptive parents did not have standing to participate in the case because they failed to file a petition to intervene. He also maintains that the Pennsylvania court had jurisdiction to make the custody determination under the Interstate Compact on the Placement of Children, (The Compact) 62 P.S. § 761. Both the pre-adoptive parents and the natural mother argue that since Appellant's reliance on The Compact to support his position that Pennsylvania is the appropriate forum has not been previously presented before the trial court, it should be considered waived for purposes of this appeal. However, as will be stated, even considering each of Appellant's argu-

ments, we conclude that the trial court did not abuse its discretion in declining to exercise jurisdiction and instead transferring the case to Delaware.

■ We will begin by addressing Appellant's initial claim regarding standing. Appellant asserts that the pre-adoptive parents lacked standing to litigate for an award of physical custody once the adoption proceedings had been ruled unsuccessful. In support of his claim, Appellant likens this case to those involving foster parents, wherein the courts have ruled that the relationship implies a warning against a deep emotional involvement with the child. *See: Priester v. Fayette County Children and Youth Services*, 354 Pa.Super. 562, 512 A.2d 683 (1986).

■ While we do not agree that parties in the position of pre-adoptive parents can be said to be warned from making an emotional attachment to the child much like a foster parent, we find it unnecessary to examine in detail the pre-adoptive parents' standing in the custody matter. This case was transferred from the orphans' court to the family division for resolution of the custody matter after the adoption proceedings had concluded. Although the pre-adoptive parents were not named parties in the orphans' court litigation and did not immediately intervene in the custody proceeding, we find these facts to be of no consequence. The appeal in this case has been taken from a court order transferring jurisdiction. The motion to transfer jurisdiction was filed by the pre-adoptive parents, however it was joined in by both Golden Cradle and the birth mother, neither of whom has had their standing challenged by Appellant. Further, as noted by the trial court, in a custody case the court need not be prompted by a party's motion to transfer a case on forum non conveniens grounds, but instead could act sua sponte. The court's ability to transfer on its own motion is provided for in 42 Pa.C.S.A. § 5348(b) which states that "a finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or of a guardian ad litem or other representative of the child."

■ Finally, with regard to this issue we also note the trial court's comments that it would have been required to order that the pre-adoptive parents be made parties even if they were not already named parties in the custody suit since they had physical custody of the child. Pennsylvania Rule of Civil Procedure 1915.6 provides:

If the Court learns from the pleadings or any other source that a parent whose parental rights have not been previously terminated or a person who has physical custody of the child is not a party to the action, it shall order that the person be joined as a party.

■ Finding no merit to the Appellant's argument that the court's decision should be reversed because the pre-adoptive parents lacked standing to raise the matter, we turn now to a discussion of the court's decision concerning the appropriate forum. As stated, the trial court ruled that the custody of this child would best be determined by the courts of Delaware. The court reasoned that it was within its discretion to determine that it was in the child's best interest to have the custody determination made by the state of Delaware since it was the "home" state of the child, it was the state where all the parties resided and it was the state with a substantial connection to the child and evidence concerning her present and future welfare. The court also concluded that the purposes of the Uniform Child Custody Jurisdiction Act (UCCJA), 42 Pa.C.S.A. § 5341 *et seq.*, would be fostered by transferring jurisdiction to Delaware.

The UCCJA contains a section concerning "inconvenient forum." It provides:

(a) **General rule.**—A court which has jurisdiction under this subchapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

.   .   .   .   .

**(c) Factors to be considered.**—In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the home state of the child.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the present or future care, protection, training, and personal relationships of the child is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate.

(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5342 (relating to purposes and construction of subchapter.)

The state of Delaware is most certainly the "home state" of the child as that term is defined in the UCCJA. *See* 42 Pa.C.S.A. § 5343. Delaware is also the state where the natural parents of the child reside and the persons with whom the child has been living since birth. Under these facts there is evidence to support the trial court's finding that it is "undisputed" that all information concerning the child's present and future welfare is in Delaware. One of the stated purposes of the UCCJA is to:

Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this Commonwealth decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

The state with the closer connection to this child is most certainly Delaware. Evidence concerning her present environment and well-being will be found in Delaware, as will witnesses who may relay information on the circumstances and backgrounds of the parties. It has been held that a decision of a court to decline jurisdiction under the UCCJA will not be disturbed absent an abuse of discretion, *Joselit v. Joselit*, 375 Pa.Super. 203, 209, 544 A.2d 59, 61 (1988), and we find no such abuse of discretion in the instant case.

Despite the obvious connection to the Delaware forum Appellant maintains that the courts of Pennsylvania must retain jurisdiction in this matter under the provisions of The Compact. Because the instant action arises out of a failed adoption where the pre-adoptive parents sought to establish their rights as parents within Pennsylvania's border, Appellant reasons that the courts of Pennsylvania must comply with the terms of The Compact. He specifically cites to the following language:

> The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment, and disposition of the child which it would have had if the child had remained in the sending agency's state until the child is adopted, reaches majority, becomes self supporting, or is discharged with the occurrence of the appropriate authority. Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law.

62 P.S. § 761 Article V.

■ Although The Compact clearly provides the courts of Pennsylvania with jurisdiction in this matter, even in relation to a custody proceeding, absent from The Compact is any suggestion that the Pennsylvania courts may not refuse to exercise jurisdiction and instead transfer jurisdiction to a more appropriate forum where the circumstances so require. The ability to decline to exercise jurisdiction in favor of another forum is supported by the stated purpose and policy of The Compact. Article I of The Compact

provides: "It is the purpose and policy of the party states to cooperate with each other in the interstate placement of children to the end that: ... (d) Appropriate jurisdictional arrangements for the care of children will be promoted." 62 P.S. 761. Appropriate jurisdictional arrangements may in some circumstances, such as those presented in the instant case, demand that a case be transferred to another state. The ability to effectuate such a transfer is in keeping with the terms of the UCCJA and enables the Compact and the UCCJA to be read together to provide for consistent results.

The appellate courts of Illinois had an opportunity to consider the relationship between The Compact and the UCCJA in *In re Marriage of Slate*, 181 Ill.App.3d 110, 129 Ill.Dec. 844, 536 N.E.2d 894 (1989). Therein, the trial court ruled that the state of Washington retained jurisdiction under The Compact since that state had appointed a legal guardian of three children whose custody was sought by their mother in Illinois. The children who lived in Washington foster homes were declared dependent by the state of Washington. That state later placed the children with their paternal aunt in Illinois and licensed her as a foster parent and later appointed her the children's permanent guardian. Nearly three years later the children's mother sought custody in relation to her pending divorce proceedings which were conducted in Illinois where the mother resided. With regard to jurisdiction, the Illinois court ruled that The Compact should be strictly construed and concluded that Washington retained jurisdiction.

In considering this ruling, the appellate court noted that the UCCJA permits some discretion in a trial court's determination of its jurisdiction "to ensure that the litigation takes place in the forum where the ties between the State and the child and his family are closest." *Id.* at 114, 129 Ill.Dec. at 846, 536 N.E.2d at 896. The court also remarked that the "overall purpose of the [Compact] is to facilitate the cooperation between states for the interstate placement of children." *Id.* at 114, 129 Ill.Dec. at 847, 536 N.E.2d at

897. The court ruled that the lower court's decision, declining the exercise of jurisdiction in deference to the court's of Washington, should be reversed. Since Illinois held the childrens' relevant school records and was the state where witnesses and evidence regarding custody or visitation would be located, it had superior access to relevant information and was the more appropriate forum. The court found that it was required to look at the present and future circumstances, not merely to the past ties to Washington which occurred because of that court's dependency declaration in the matter.

Likewise in the instant case, the trial court was wise to not focus solely on its relationship to the underlying adoption proceeding in this Commonwealth which would confer jurisdiction under The Compact. The court properly examined the facts of the case and sought out a determination which would best provide for the child's interest. We find that the trial court's decision transferring jurisdiction to Delaware was in keeping with the purposes of both The Compact and the UCCJA. Delaware is clearly the jurisdiction with the greatest ties to the child and the parties seeking custody. Delaware contains information concerning the past years of the child's life and those who seek her custody. We find no abuse of discretion in the trial court's decision declining to exercise jurisdiction and transferring the matter to the courts of Delaware.

The decision we reach today is made in keeping with the provisions of our Federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A. In *Barndt v. Barndt*, 397 Pa.Super. 321, 580 A.2d 320 (1990) it was noted that the principle purposes of the PKPA was "To protect the right of a decree issuing state to exercise exclusive continuing jurisdiction over its child custody orders in certain cases, and to channel custody litigation into the court having continuing jurisdiction by requiring states to give full faith and credit to the custody decrees of states retaining jurisdiction and preventing the issuance of com-

peting decrees." 397 Pa.Super. at 331, 580 A.2d 325. Citing to the PKPA, the *Barndt* court remarked:

> Finally, and most importantly, the PKPA creates a separate basis for exclusive continuing jurisdiction in the state which issued the original decree. So long as the original decree state continues to have jurisdiction under its own law, and remains the residence of the child *or any contestant*, it has *exclusive* continuing jurisdiction over all future custody actions involving that child. 28 U.S.C. § 1738A(c)(2)(E) and (d).

(397 Pa.Super. 333–334, 580 A.2d 326.)

■ Although this Commonwealth placed legal custody of the child with Golden Cradle, Pennsylvania does not maintain exclusive jurisdiction under the PKPA. Exclusive continuing jurisdiction under the PKPA is available only so long as the state which issued the original decree remains the residence of the child or any contestant. In this case, neither the child nor any party seeking custody is, or ever was, a resident of Pennsylvania. Thus, our decision to affirm the trial court's transfer of the custody action to the courts of Delaware, where the children and the parties have resided and continue to reside, is not in contravention of federal law.

Finding support for the trial court's decision to decline to exercise its jurisdiction in favor of the state of Delaware, we affirm the trial court order.