616 N.E.2d 763 (1993)
In re the MATTER OF C.B., Child in Need of Services.
Marion County Department of Public Welfare, Appellant-Petitioner,
v.
Florida Beard, Appellee-Respondent.
No. 49A05-9112-JV-417.
Court of Appeals of Indiana, Fifth District.
June 30, 1993.
*764 Mary Jane Norman, Marion County Dept. of Public Welfare, Indianapolis, for appellant-petitioner.
Brant L. Ping, Indianapolis Legal Aid Soc., Indianapolis, for appellee-respondent.
BARTEAU, Judge.
The Marion County Department of Public Welfare ("MCDPW") appeals an order by the Marion County Superior Court, Juvenile *765 Division ("Marion County Court"), requiring the MCDPW to pay Mother's expenses to secure the return of her child, C.B., from Tennessee to Indianapolis. C.B. was placed with her aunt and uncle in Tennessee pursuant to the Interstate Compact for the Placement of Children. Pursuant to the placement, but after a three-year delay, C.B.'s uncle sought legal guardianship over C.B. in Tennessee. Before the Tennessee court could rule on guardianship, the Marion County Court ordered C.B. to be returned to Indianapolis. When the MCDPW refused to take action to secure her return, the Marion County Court authorized Mother to take any necessary legal action and ordered MCDPW to pay Mother's expenses for same. On appeal, the MCDPW challenges the Marion County Court's authority to make the order requiring it to pay Mother's legal expenses. MCDPW also appeals the Marion County Court's order requiring it to praecipe for parts of the record requested by Mother at its expense.
We reverse in part and affirm in part.

FACTS
C.B., born in January, 1982, and her sister, L.B., born in March, 1983, were found to be Children in Need of Services (CHINS) in November, 1983. On November 14, 1983, the Marion County Court placed the children in the custody of the MCDPW for placement in a foster home, the Guardian Home or with a relative. They were both placed in a foster home, where Mother visited them regularly. After Mother completed the rehabilitative services offered by the MCDPW, the children were returned to Mother's care in April, 1984. Shortly thereafter, L.B. died of a fractured skull. Mother eventually pleaded guilty to charges of involuntary manslaughter with regard to L.B.'s death. In September, 1985, at the recommendation of the MCDPW, the Marion County Court ordered that the MCDPW retain custody of C.B., but that she be placed with her aunt and uncle, Eva and Ellis Jones, in Memphis, Tennessee. The Joneses were to seek legal guardianship of C.B. in Tennessee. At this time, the Marion County Court advised Mother that she would not be receiving additional services from the MCDPW. Mother, who was represented by counsel, agreed to the placement of C.B. with the Joneses and agreed to cooperate in their being appointed C.B.'s guardians.
Eva Jones died in 1986; however, the MCDPW recommended that C.B. be permitted to stay with Ellis Jones and his new wife. Mother did not object, and the Marion County Court approved the recommendation. Thereafter, the Marion County Court held placement review hearings every six months. On September 17, 1986, the Marion County Court found that Mother had completed her probation and permitted her visits with C.B. No other modifications of the original order were made from March, 1987, to March 1988. The progress reports filed with the Marion County Court by the MCDPW before each of the review hearings indicated that the Joneses had petitioned the Tennessee Court for guardianship. After a hearing on September 18, 1988, the Marion County Court noted that Mother had requested a different case plan if guardianship was not established soon. The Marion County Court ordered that C.B. be present at the next hearing on December 28, 1988, if guardianship was not established by that date. There is no indication that the Marion County Court sent notice of the hearing to the Joneses, nor is there any evidence that they received such notice.
In its progress reports filed with the Marion County Court before each review hearing from September, 1986, to September, 1988, the MCDPW consistently recommended that C.B. remain with the Joneses. However, in a report dated December 20, 1988, MCDPW recommended that C.B. be placed in foster care or relative placement in Indianapolis. MCDPW also recommended that C.B. be reunited with Mother, pending Mother's successful completion of further evaluation. According to MCDPW, Ellis had not taken steps to obtain legal guardianship at this time and the Tennessee Department of Human Services (TDHS) was going to end its involvement in the case. The Marion County Court agreed *766 with MCDPW and ordered C.B. to be returned to Indianapolis. According to the Marion County Court, uprooting the child from the Joneses' home where she had lived since 1985 was necessary to determine the child's best interest. Another hearing was set for January 25, 1989. Again, there is no indication that the Joneses were sent or that they received notice of this order.
By letter dated January 13, 1989, MCDPW received notice from TDHS that the Joneses had petitioned for guardianship over C.B. on December 19, 1988. A hearing on the petition was scheduled to be held in Memphis on February 8, 1989. In light of this information, the Marion County Court ordered that C.B. not be transferred to Marion County, pending the outcome of the Memphis proceedings. At the February 8 hearing in Memphis, the Tennessee court granted temporary guardianship to the Joneses, appointed a guardian ad litem for C.B., held judgment on permanent guardianship under advisement and continued the hearing until April 5, 1989, to give the attorneys and C.B.'s guardian ad litem opportunity to submit briefs on the question of jurisdiction under the Uniform Child Custody Jurisdiction Act. The TDHS caseworker reported that C.B. would not be returned to Indianapolis, if at all, until after the hearing in April.
On February 8, 1989, the Marion County Court again ordered C.B. to be returned to Indianapolis. The order indicated that a copy of this order was to be sent to the Joneses as well as to the Tennessee Court. However, there is no indication that the Joneses received a copy of this order. The Tennessee Court was not willing to release C.B. until a hearing could be held on the question of jurisdiction. On June 6, 1989, the Tennessee Court awarded the Joneses guardianship of C.B.
The matter did not end there. After a hearing on June 21, 1989, the Marion County Court's order stated "MCDPW will be pursuing action through federal court to have the child returned to this court's jurisdiction." (R. 93). No such action was taken and on September 21, 1989, Mother petitioned the Marion County Court for an order "mandating the Marion County Department of Public Welfare to do all things necessary to fulfill its duties pursuant to the Court's previous order, and the Juvenile Code and Interstate Compact." (R. 96). The Marion County Court granted the petition and ordered the MCDPW to file a federal habeas corpus petition. Although the MCDPW filed a Notice of Intent to File a Writ of Habeas Corpus in federal court on November 8, 1989, no further action was taken. On October 2, 1991, the Marion County Court ordered MCDPW to continue its efforts to bring C.B. back to Indianapolis. The MCDPW filed a motion to reconsider this order on October 30, 1991, alleging that the Indiana Attorney General and private counsel had been consulted to determine whether federal habeas corpus relief was available and had concluded that it was not. The Marion County Court denied the motion to reconsider after a hearing on November 20, and authorized Mother to hire counsel to have C.B. returned to Indiana, with the MCDPW to pay Mother's legal fees. MCDPW appeals the denial of its motion to reconsider as well as an order by the Marion County Court requiring MCDPW to praecipe and to pay for parts of the record requested by Mother.

DISCUSSION
The MCDPW argues that the Marion County Court erred in denying its motion to reconsider. MCDPW concedes that inherent in the court's authority to make an order is the authority to enforce it by another order. In essence, the MCDPW argues that under the Uniform Child Custody Jurisdiction Act ("UCCJA") (Ind. Code 31-1-11.6-1 et seq. and Tenn. Code Ann. 36-6-201 et. seq.), the Marion County Court was without jurisdiction to order C.B. returned to Indianapolis. Therefore, the argument goes, the order that C.B. be returned to Indianapolis and the order that MCDPW pay Mother's expenses in securing the return of C.B. to Indianapolis are nullities. Mother argues that pursuant to the Interstate Compact on the Interstate Placement of Children ("Compact"), now codified at I.C. XX-XX-X-X and T.C.A. 37-4-201, the *767 Marion County Court retained jurisdiction over C.B.
Tennessee and Indiana are signatories to both the UCCJA and the Compact. The UCCJA appears in the Marriage and Divorce chapter of the Indiana Code (Title 31) and in the Domestic Relations chapter of the Tennessee Code (Title 36). It is intended to deal with "matters of child custody" in which courts of different states become involved. I.C. 31-1-11.6-1(a); T.C.A. 36-6-201. The principle purposes of the UCCJA are to discourage forum shopping and to protect the best interests of the children. Horlander v. Horlander (1991), Ind. App., 579 N.E.2d 91, 98, reh'g denied, trans. denied. It also operates to prevent the entry of different custody and/or visitation orders from different states. The UCCJA governs "custody proceedings" which are defined as "proceedings in which a custody determination is one of several issues, such as an action for dissolution of marriage, and includes child neglect and dependency proceedings." I.C. 31-1-11.6-2(3).
Under the "home state" test for jurisdiction of the UCCJA, a court of a state which is otherwise competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification decree if the child had lived in the state six months immediately before the time involved in the litigation. I.C. 31-1-11.6-3 and 5; T.C.A. 36-6-203(a) and 202(5). However, determining the "home state" of the child is merely the first step in determining jurisdiction. As explained by this court in Horlander, 579 N.E.2d 91, the trial court must first determine whether it has jurisdiction under the "home state" test. If that test is met, the court must then determine if it may exercise that jurisdiction. If there is a custody proceeding pending or a decree in another state which presently has jurisdiction, the court of the second state may only exercise jurisdiction if 1) it appears to the court of the second state that the court which rendered the decree does not now have jurisdiction under the UCCJA, and 2) the court of the second state has jurisdiction. See also Brown v. Brown (1993), Tenn., 847 S.W.2d 496.
The Compact appears in the Child Welfare chapter of the Indiana Code (Title 12) and in the Juvenile chapter of the Tennessee Code (Title 37). Its purpose is 1) to maximize the opportunity for the placement of a child by facilitating interstate placement; 2) to provide a channel for exchange of information between the sending state and the receiving state; and 3) to resolve jurisdictional conflicts. Compact, Art. I(c) and (d). The Compact recognizes that placement in a home outside of the state may be in the best interest of the child. However, an agency such as the MCDPW may be reluctant to place a child in the other state where the agency may not monitor the child and the placement situation. When a placement is made pursuant to the Compact, however, the appropriate state agency of the state in which the child is placed (the receiving state) monitors the placement and reports to the sending agency. In this manner, the child may be placed across state lines where it is in that child's best interest, and the agency charged with the child's well-being from the sending state carries out its duties through the receiving state. See Bernadette Hartfield, The Role of the Interstate Compact on the Placement of Children in Interstate Adoption 68 Neb.L.Rev. 292, 296-96 (1989).
"Placement" is defined in the Compact as:
the arrangement for the care of a child by an individual in a free home, in a boarding home, or in a child-caring agency or institution but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character and any hospital or other medical facility.
Although the MCDPW recommended C.B.'s placement in Tennessee, she was actually placed pursuant to the Marion County Court's order. Under the Compact, before an interstate placement may occur, the sending agency must provide the appropriate agency of the receiving state (referred *768 to in the record here as "the Tennessee Interstate Compact office") information about the child and the home in which the child will be placed. Compact, Art. III. The placement may not occur until the receiving state has notified the sending agency in writing "that the proposed placement does not appear to be contrary to the best interest of the child." Compact, Art. III(d). The Compact is not applicable to the sending or bringing of the child into the receiving state when it is done by a parent, stepparent, grandparent, adult brother, sister, uncle or aunt who is leaving the child with a relative or non-agency guardian in the receiving state. Compact, Art. IV. However, this limitation does not apply here. In Indiana, the welfare department is charged with the administration of the Compact.[1] I.C. XX-X-XX-X.
Article V of the Compact governs jurisdiction and provides as follows:
The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law. The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of placement. Nothing contained herein shall defeat a claim of jurisdiction by a receiving state sufficient to deal with an act of delinquency or crime committed herein.
The parties suggest that we must choose between the UCCJA and the Compact. However, both the UCCJA and the Compact relate to the same general subject matter. Therefore, they should be read together to produce a harmonious system of legislation. Economy Oil Corp. v. Indiana Dep't of State Revenue (1974), 162 Ind. App. 658, 664, 321 N.E.2d 215, 218. See also In re Marriage of Slate (1989), 181 Ill. App.3d 110, 129 Ill.Dec. 844, 536 N.E.2d 894. We note that because this is a CHINS proceeding, the court is also governed by the procedural constraints of the relevant CHINS statutes.
According to the UCCJA, specifically T.C.A. 36-6-215, (I.C. 31-1-11.6-14) Tennessee could only exercise jurisdiction over C.B. if it was determined that Indiana did not have jurisdiction. Under Article V of the Compact, Indiana, as the sending state, clearly retains jurisdiction when it orders interstate placement. In a CHINS proceeding, that jurisdiction continues until the child and the child's parent or guardian have been discharged by the court under I.C. XX-X-X-XX(c).[2] Thus, the Tennessee *769 court was without jurisdiction to determine guardianship. Jurisdiction remained in the Marion County Court.
Although the Marion County Court clearly had jurisdiction over C.B. and the custody determination, we must address an issue not raised by either party. We find no indication in the record that the Joneses received notice of any of the hearings conducted by the Marion County Court.[3] As this is a CHINS proceeding, the Marion County Court was bound by the requirements of the CHINS statute. The court may modify any dispositional decree while it retains jurisdiction. I.C. XX-X-X-XX. However, under I.C. XX-X-X-XX.3(g), the court is required to advise the child and the child's parent, guardian or custodian of any modification procedures.[4] Notice to those who have physical custody of the child, as well as proof of service, is also required pursuant to the UCCJA. I.C. 31-1-11.6-4 and 5.[5]
Notice to those who have physical custody of the child is particularly important. The Marion County Court here stated that it believed C.B.'s presence in Indiana was required to assess her best interest. However, the Joneses, who have acted as C.B.'s parents since 1985, could provide the court with essential information relevant to its determination, such as C.B.'s school records, information about her relationships with friends and family in Memphis, as well as information on her day to day life. This information may have been sufficient for the court without uprooting C.B. from the only home she has known for the past eight years to bring her to Indianapolis where she faces an uncertain future.[6] Further, there may have been a reason why the Joneses did not seek guardianship sooner. However, because they did not receive notice, they were not given an opportunity to present it to the court.
*770 As notice is required both under the CHINS statute as well as the UCCJA, we hold that the Marion County Court's modifications of the dispositional decree ordering C.B. to be returned to Indianapolis are invalid. The court's order requiring MCDPW to pay Mother's legal expenses is likewise invalid, and MCDPW's motion to reconsider should have been granted.

SUPPLEMENTAL PRAECIPE
The MCDPW also argues that the Marion County Court erred in ordering it to praecipe and to pay for parts of the record requested by Mother. We find this issue is waived on appeal because MCDPW made no objection to the trial court before it complied with the court's order.[7]
In summary, we reverse the court's order requiring C.B. to be returned to Indianapolis as well as the order requiring MCDPW to pay Mother's expenses to secure C.B.'s return. Because MCDPW waived its objection to the court's order requiring it to praecipe and pay for parts of the record requested by Mother, we affirm the court's order in this regard.
REVERSED IN PART, AFFIRMED IN PART.
SHARPNACK, C.J., and NAJAM, J., concur.
NOTES
[1] The Compact states that "compliance with each and every requirement set forth in this article is required to invoke the provisions of the Compact." Compact, Art. III(a). In Florida Dep't of Health and Rehab. Serv. ex. rel. West Virginia Dep't of Human Serv. v. Thornton (1990), 183 W. Va. 513, 396 S.E.2d 475, the court indicated that failure to follow the requirements of the Compact would result in a loss of jurisdiction by the sending state. However, the case was remanded to the trial court for a determination of whether the terms of the Compact had indeed been violated.

It is unclear from the record whether the requirements for interstate placement under the Compact have been met here. This is likely due to the fact that MCDPW and not the Marion County Court is the Compact administrator, and there is no requirement under the Compact that the communications between the states be filed with the court. However, there is no allegation that the requirements of the Compact were not met by the MCDPW.
Although the record is void of specific communications between Indiana and Tennessee, there are several references in the record to the fact that C.B. was placed pursuant to the Compact. A report filed by the Tennessee caseworker mentions the involvement of the "ICPC office of the TDHS in Memphis". (R. 69). At a hearing on October 2, 1991, in the Marion County Court, Mother's counsel, MCDPW's counsel and the court all agreed that the Compact was applicable to this case.
[2] Citing Ind. Code 31-6-4-19, MCDPW argues that the Marion County Court was divested of jurisdiction because the objectives of the dispositional decree had been accomplished. Indiana Code 31-6-4-19(g) provides in relevant part:

When the juvenile court finds that the objectives of the dispositional decree have been met, the court shall discharge the child and the child's parent, guardian, or custodian.
This provision clearly requires a finding by the court that the objectives of the dispositional decree have been met. Here, there has been no such finding. Therefore, this argument is without merit.
[3] The Marion County Court's order of February 8, 1989, does indicate that a copy of the order was to be sent to the Joneses and the Tennessee court. However, there is no indication that a copy was in fact sent.
[4] Under I.C. 31-6-7-3, the right to be present at any hearing concerning the child is waived by that person's failure to appear after lawful notice. However, we have no indication here that the Joneses received lawful notice of any of the hearings.
[5] I.C. 31-1-11.6-4 provides:

Notice and Opportunity to be Heard. Before making a decree under this chapter, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. If any of these persons are outside this state, notice and opportunity to be heard shall be given pursuant to section 5 of this chapter.
I.C. 31-1-11.6-5 provides:
Notice to Persons Outside this State; Submission to Jurisdiction. (a) Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be:
(1) by personal delivery outside this state in the manner prescribed for service of process within this state;
(2) in the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its court of general jurisdiction;
(3) by any form of mail addressed to the person to be served and requesting a receipt; or
(4) as directed by the court.
(b) Notice under this section shall be served, mailed, or delivered, at least twenty (20) days before any hearing in this state.
(c) Proof of service outside this state may be made by affidavit of the individual who made the service, or in the manner prescribed by the law of this state, the order pursuant to which the service is made, or the law of the place in which the service is made. If service is made by mail, proof may be a receipt signed by the addressee or other evidence of delivery to the addressee.
(d) Notice is not required if a person submits to the jurisdiction of this court.
Ellis Jones refused to submit to the jurisdiction of the Marion County Court.
[6] According to the court's order, C.B. was to be returned so the court could determine her best interest. There was no provision in the order that C.B. be returned to the Joneses if she could not be reunited with Mother.
[7] As to which party bears the cost of preparation of the record, we refer the parties to Ind.Appellate Rule 7.2(C); Adamson v. Norwest Bank (1993), Ind. App., 609 N.E.2d 35 (interlocutory appeal from trial court's order requiring appellant to pay for parts of the record as requested by appellee); Briggs v. Clinton County Bank & Trust Co. (1983), Ind. App., 452 N.E.2d 989 (motion to this court pursuant to Ind.Appellate Rule 15(H) to assess costs incurred by the appellee in supplementing the incomplete record to appellant.)