Phylenne TUTTLE (aka Henderson),
Plaintiff and Appellant,

v.

Donald L. HENDERSON, Defendant
and Respondent.

No. 17104.

Supreme Court of Utah.

April 9, 1981.

Robert B. Sykes, Salt Lake City, for plaintiff and appellant.

Craig M. Snyder, Provo, for defendant and respondent.

HALL, Justice:

Plaintiff appeals the dismissal of her petition to modify a California custody decree.

The parties were divorced in California on August 4, 1976. Pursuant to the terms of the decree plaintiff was awarded custody of the two minor children.[1] Since the divorce decree was entered, there have been numerous disputes concerning custody and visitation rights, many of which are not pertinent to this appeal.

On April 15, 1979, defendant petitioned the California court to modify the custody provisions of the decree. Also, in April, 1979, plaintiff and the children moved from California to Utah. In August, 1979, the California court awarded defendant temporary custody.[2] On September 7, 1979, plaintiff filed suit No. 52460 in Utah County whereby she sought "the care, custody and control of the minor children." Prior to the time defendant was served with a copy of the summons and complaint (October 1, 1979), he came to Utah and took the children back to California with him. On October 22, 1979, defendant, *pro se*, answered the complaint by letter wherein he enclosed a copy of the decree of the California court awarding him temporary custody.

In November, 1979, the California temporary custody award was made permanent. In December, after receiving several letters from plaintiff, the California court *sua sponte* reopened the case and set hearing for March 28, 1980. Pursuant to her rights of visitation, plaintiff arranged with defendant to have the children from March 28 to April 4, 1980. On March 28, plaintiff went to California, picked up the children, and appeared in court. The court continued the hearing scheduled on that date until April 14, 1980, after the children had returned from their visit with plaintiff in Utah. Rather than returning the children to California, on April 7, 1980, plaintiff filed suit No. 54138 in Utah County whereby she sought modification of the California decree of November, 1979, which awarded defendant permanent custody of the children. On

---

1. Stacie, born January 11, 1973, and Pamela, born January 10, 1976.

2. Plaintiff was represented by counsel at the August hearing.

April 8, 1980, the Utah court ruled that it had no jurisdiction over case No. 54138, but that it did have jurisdiction over No. 52460. Plaintiff therefore refiled her claims for modification under No. 52460. Meanwhile, at the hearing on April 14 in California, the court ruled that there had been no change of circumstances to justify a change of custody. The California court affirmed the November decree awarding defendant permanent custody of the children and issued a writ of habeas corpus directing that the children be returned to defendant.

On May 7, 1980, the Utah court requested counsel to appear to discuss suit No. 52460. As a result of that hearing, the court ruled that it would consider the merits of plaintiff's petition for modification only if plaintiff would comply with the order of the California court of November, 1979. The Utah court further ordered that if plaintiff did not relinquish custody to defendant within seven days, then the court would entertain an ex parte application by defendant to issue a writ of habeas corpus directing an appropriate law enforcement agency to return the children to defendant. An order to this effect was signed on May 8, 1980. Subsequently, plaintiff's counsel informed the court that "plaintiff does not intend to release the children pursuant to the court's order of May 8, 1980." The court thereupon *sua sponte* ordered plaintiff's petition for modification dismissed. From these two orders, plaintiff takes the instant appeal.[3]

At the hearing of May 7, 1980, the court made the following statement:

> ... I suppose that under the circumstances here we couldn't say there isn't jurisdiction to proceed in Utah. Now it doesn't mean that the Court is compelled to undertake jurisdiction.... [I]t depends upon what the Court determines is in the best interest of the child as to whether it should take the jurisdiction it

has and go forward with it or decline to do so.... So you could have that problem. Now there is also a problem I see in this case ... that would lead me to believe that Mrs. Tuttle is not coming to this Court and asking relief in this Court with clean hands.

> *      *      *      *      *      *.

> ... [S]he took [the children] under a visitation right bestowed on her pursuant to the [California] decree. She took them here, and she has now refused to return them. Her conduct now is in violation of the decree it appears.

The court therefore acknowledged that it had jurisdiction, but refused to exercise it until certain conditions were met. In so ruling, the court relied upon *Plumb v. Plumb*.[4] In that case, the Court held that although jurisdiction may attach, the exercise of that jurisdiction is discretionary with the trial court.

> It is not under all circumstances, regardless of what has occurred, that once a court has acquired jurisdiction in a divorce action it should assume and exercise jurisdiction for all subsequent motions relating to the custody of minor children.[5]

■ Custody proceedings are highly equitable in nature and the controlling factor is the best interest and welfare of the child.[6] How that factor affects the exercise of jurisdiction is specifically addressed by Utah's Uniform Child Custody Act.[7] U.C.A., 1953, 78–45c–7(3) provides as follows:

> In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

> (a) If another state is or recently was the child's home state;

---

**3.** Plaintiff's designated points on appeal are that the court had jurisdiction to hear the matter and that it abused its discretion in refusing to hear the petition for modification.

**4.** Utah, 555 P.2d 1205 (1976).

**5.** Id., at p. 1207.

**6.** *Oleen v. Oleen*, 15 Utah 2d 326, 392 P.2d 792 (1964); *Sampsell v. Holt*, 115 Utah 73, 202 P.2d 550 (1949).

**7.** The Act did not take effect until July 1, 1980, and is therefore only persuasive authority as to the state of the law prior to its enactment.

(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(d) If the parties have agreed on another forum which is no less appropriate; and

(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 78–45c–1.

U.C.A., 1953, 78–45c–1 provides that:

The general purposes of this act are to:

(a) Avoid jurisdiction competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(f) Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(g) Facilitate the enforcement of custody decrees of other states;

(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(i) To make uniform the law of those states which enact it.

■ From the foregoing facts, it would appear that California is the more convenient forum. More importantly, plaintiff was undisputedly in violation of the California decree when she filed suit in Utah—hence the trial court's reference to "clean hands." Although arguably rebuttable, the presumption is that to take jurisdiction under such circumstances is not in the best interests of the child. Furthermore, in *any* equitable proceeding, the fundamental rule is that he who seeks equity must do equity.[8] Plaintiff has not done equity in the instant case.

It is important to note that the foregoing holding is consistent with the best interests of a minor child. To rule otherwise would be to encourage the practices of "child snatching" by divorced parents, which clearly is not in the child's best interests. Also, by requiring plaintiff to return custody to defendant, the court did not jeopardize its jurisdiction over defendant especially in light of his general appearance on October 22, 1979, when he answered plaintiff's complaint.

Inasmuch as plaintiff has failed to show an abuse of discretion in the trial court's refusal to take jurisdiction over the matter, the judgments appealed from are hereby affirmed. Costs to defendant.

MAUGHAN, C. J., and STEWART, HOWE and OAKS, JJ., concur.

---

8. *Coleman Co. v. Southwest Field Irrigation Co.*, Utah, 584 P.2d 883 (1978); *Jacobson v. Jacobson*, Utah, 557 P.2d 156 (1976); *Carbon Canal Co. v. Sanpete Water Users Ass'n*, 19 Utah 2d 6, 425 P.2d 405 (1967); *Glenn v. Player*, 7 Utah 2d 428, 326 P.2d 717 (1958).