Wendy Marie Christensen RAWLINGS,
Plaintiff, Respondent, and
Cross–Appellant,

v.

Mark Douglas WEINER, Defendant,
Appellant, and Cross–Respondent.

No. 860274–CA.

Court of Appeals of Utah.

April 15, 1988.

Larry E. Jones, Hillyard, Anderson & Olsen, Logan, for defendant, appellant and cross-respondent.

Stephen W. Jewell, Logan, for plaintiff, respondent and cross-appellant.

Before DAVIDSON, GARFF and BENCH, JJ.

OPINION

DAVIDSON, Judge:

Plaintiff Wendy Rawlings (Rawlings) appeals from the district court's modification of her divorce decree, claiming the trial court lacked jurisdiction to modify the decree because of the Uniform Child Custody Jurisdiction Act (UCCJA), in effect in both Utah and Washington. We affirm.

Defendant Mark Weiner (Weiner) and Rawlings were married August 16, 1974, in Manti, Utah. The parties had five children as issue of their marriage. The parties were divorced on May 18, 1982, by the Honorable Omer J. Call of the First District Court of Box Elder County, Utah. The original decree was later amended on September 27, 1982, by Judge Call. Rawlings was awarded custody of the parties'

five children while Weiner was awarded carefully enunciated visitation rights with the minor children. In December 1982, Rawlings remarried.

From 1982 to 1984 Weiner initiated several proceedings to enforce the visitation order in the divorce decree, and each time the judge ordered the parties to comply with the order.[1]

In June 1984, Rawlings sent a letter to Weiner informing him that she and the children had moved to "the Des Moines area" and could be reached at a Utah post office box. Rawlings moved to Washington in June of 1984.[2] During the summer of 1984, Weiner initiated several additional proceedings in an attempt to locate his children.[3]

In October 1984, another hearing was held and the court found that Rawlings' move constituted a substantial change in circumstances allowing modification of the visitation provisions in the divorce decree.

In April 1985, a shelter care hearing was held in Washington, pursuant to emergency jurisdiction provided for in the Washington UCCJA, to determine allegations of child abuse made by Rawlings against Weiner. Commissioner Gaddis of the Washington court noted that the Washington court orders were temporary and any permanent adjudication or realignment of the parties had to come from Utah, until the Utah court declined jurisdiction.

In October 1985, Weiner filed an order to show cause in Utah. In November 1985, Rawlings petitioned for transfer of jurisdiction from Utah to Washington. Pursuant to Rawlings' transfer request, Commissioner Gaddis contacted the court in Utah and after discussion with Judge Call declined to accept jurisdiction in Washington. Commissioner Gaddis urged the Utah court to retain jurisdiction to enforce or modify custody and visitation orders.

On December 23, 1985, Judge Call filed a statement and order and certified the matters of disqualification and jurisdiction to Judge VeNoy Christoffersen of the First District Court of Utah for determination. Judge Christoffersen denied Rawlings' motion to disqualify Judge Call, denied the Motion to Change Jurisdiction, and set a hearing date in May 1986, for the order to show cause. On October 21, 1986, the findings of fact, conclusions of law, and order on the order to show cause were entered by the court. The court found Rawlings in contempt for continuing to use "Rawlings" as the children's last name after being ordered not to do so, modified the visitation order and ordered that the parties have joint custody of the children, with Rawlings maintaining physical custody.

Weiner timely appealed the October 21, 1986 order. Rawlings cross-appealed on grounds that the First District Court lacked jurisdiction. Weiner's appeal was dismissed for lack of prosecution by order of this Court on June 9, 1987.

Before addressing the issue of jurisdiction it is important to note that there is no transcript of the May 1986 hearing. Rawlings refers to continuing objections to jurisdiction made at the May hearing. There is no record of these objections as Rawlings requested no transcript. As held in *Fackrell v. Fackrell*, 740 P.2d 1318 (Utah 1987):

> Appellate review of factual matters can be meaningful, orderly, and intelligent only in juxtaposition to a record by which lower courts' rulings and decisions on disputes can be measured. In this case without a transcript no such record was available, and therefore no measurement of the district court's action can be made as urged upon us by defendant.

---

1. All hearings were before Judge Call. The orders on the order to show cause enumerated here dealt exclusively with compliance of visitation rights. The orders by Judge Call were: November 17, 1982; May 16, 1983; February 16, 1984; May 29, 1984.

2. The "Des Moines area" referred to in the letter turned out to be a suburb of Seattle, Washington.

3. Weiner's continued attempt to locate his children resulted in additional orders by Judge Call on July 26, 1984 and August 8, 1984.

*Id.* at 1319–20 (quoting *Sawyers v. Sawyers,* 558 P.2d 607, 608–09 (Utah 1976)). Without "adequate citations to the record, the judgment of the lower court is presumed to be correct." *Fackrell,* 740 P.2d at 1319.

Utah Code Ann. § 30–3–5(3) (1987) provides:

> The court has continuing jurisdiction to make subsequent changes or new orders for the support and maintenance of the parties, the custody of the children and their support, maintenance, health, and dental care, or the distribution of the property as is reasonable and necessary.

This statute establishes continuing jurisdiction in the First District Court of Box Elder County as the court granting the decree of divorce. Rawlings argues that notwithstanding the continuing jurisdiction, under the Utah UCCJA, Utah Code Ann. §§ 78–45c–1 to 26 (1987), this state is an inconvenient forum. Section 78–45c–3(1) states:

> A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:
>
> (a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
>
> (b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

> (c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
>
> (d) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

Section 78–45c–3(3) states:

> Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

Section 78–45c–7(3) states:

> In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
>
> (a) if another state is or recently was the child's home state;
>
> (b) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;
>
> (c) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
>
> (d) if the parties have agreed on another forum which is no less appropriate; and
>
> (e) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in § 78–45c–1.

The UCCJA does not mandate loss of jurisdiction to the original state in all cases. Only if Utah chooses to relinquish

jurisdiction, based on the best interests of the children, will such jurisdiction transfer.[4] In *Trent v. Trent,* 735 P.2d 382 (Utah 1987), the Utah Supreme Court affirmed the trial court's authority under the Utah UCCJA in declining to relinquish jurisdiction to Idaho. In *Trent* the children had neither lived in nor had any contacts with the State of Utah, unlike the children in this case. While *Trent* dealt exclusively with enforcement of visitation, it makes clear that the UCCJA is not mandatory.

■ The facts show that Washington specifically declined to exercise jurisdiction because of Utah's past and present involvement with the matter. The judge in Utah and commissioner in Washington conferred and determined that Utah was the more appropriate forum and that Utah would continue to have exclusive subject matter jurisdiction over the custody and visitation of the parties' children. This is precisely the position described in section 78–45c–3(1)(d)(i).[5] We hold that the First District Court appropriately retained jurisdiction under the Utah UCCJA to make any determinations regarding custody, visitation or other matters relevant to the children.

The judgment of the trial court is affirmed.

GARFF, J., concurs.

BENCH, Judge (concurring):

For me, the instant case presents a very narrow question: How does a state's continuing jurisdiction in a divorce case mesh with foreign jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), 9 U.L.A. 116 (1979)? I believe the question is answered by section 14(1) of UCCJA,[1] which was not mentioned by the majority but provides as follows:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

The Commissioner's note to section 14 explains the circumstances under which jurisdiction would shift:

Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.

9 U.L.A. at 154 (citation omitted).

The Reporter for the Special Committee preparing the UCCJA was even more specific when she noted the following:

---

4. It may be argued that jurisdiction may be obtained through the emergency provision in section 78–45c–3(1)(c) as was done in this case. However, accepting such jurisdiction on an emergency basis does not give permanent jurisdiction. The court is still required to contact the original state court to determine which court is most convenient and best serves the interests of the children and the parties.

5. Section 78–45c–3(1)(d)(i) is the same version as used by Judge Call in December 1985.

1. In Utah, Utah Code Ann. § 78–45c–14(1) (1987); in Washington, RCWA 26.27.140 (1986).

A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B, with or without permission of the court to remove the children. State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the "home state" under section 3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years.

Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand.L.Rev. 1207, 1237 (1969) (quoted in *State ex rel. Cooper v. Hamilton*, 688 S.W.2d 821, 826 (Tenn.1985)).

Under the facts of this case, Utah's jurisdiction over custody issues was primary and Washington's jurisdiction was secondary. The parties were divorced in Utah. Rawlings subsequently moved to Washington, taking the children with her. Weiner remained in Utah, and continually sought enforcement of his visitation rights under the Utah decree. At Rawlings' request, Washington took emergency jurisdiction under UCCJA. On discovering that Utah had continuing jurisdiction over custody, Washington declined any further jurisdiction under section 14(1). That was precisely what should have happened under UCCJA. Because Utah had primary jurisdiction over custody of the children, I concur in affirming the judgment of the trial court.