**Carolyn CRUMP, nka Carolyn Forsgren, Plaintiff and Appellee,**

v.

**Robert CRUMP, Defendant and Appellant.**

**No. 900362–CA.**

Court of Appeals of Utah.

Nov. 22, 1991.

---

Robert A. Echard, Gridley, Echard & Ward, Ogden, for defendant and appellant.

Stephen W. Jewell, Jeffrey "R" Burbank, Deputy Cache County Atty., Logan, for plaintiff and appellee.

Before GARFF, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

Robert Crump appeals the lower court's denial of his petition to modify a Montana court's award of joint custody to him and Carolyn Crump, of their four children. We dismiss the appeal.

## FACTS

Mr. and Mrs. Crump were granted a decree of divorce on December 7, 1983, by a Montana district court. Prior to a hearing on the issue of child custody, Mrs. Crump moved with the parties' four children from Montana to Utah. In August 1985, the Montana district court awarded Mr. Crump and Mrs. Crump joint legal custody of the children, with primary physical custody awarded to Mrs. Crump. In February 1989, Mr. Crump filed a petition in Utah to modify the Montana custody decree. The petition alleged a material change of circumstances, and urged that Mr. Crump be awarded primary physical custody of the children. Mr. Crump resided in Montana at the time he filed his petition, and has been a resident of that state at all times relevant to the present case. On April 24 and May 4 of 1990, the trial court in Utah heard evidence and denied the petition to modify the prior custody decree. However, the court made a slight change in the visitation provisions and modified the child support provisions of that decree.

Mr. Crump appeals the trial court's denial of his petition to modify the custody order. On appeal, Mr. Crump raises three issues, claiming: (1) the trial court committed error in applying the standard for reviewing a petition to modify a child custody award; (2) the trial court abused its discretion in not modifying the award; and (3) the trial court committed error in failing to admit certain evidence.

## JURISDICTION

A threshold issue is whether or not this court has jurisdiction to hear the appeal. If a court lacks jurisdiction "it has not power to entertain the suit." *Curtis v. Curtis*, 789 P.2d 717, 726 (Utah App.1990) (citation omitted). Not only can a court not entertain the suit, the parties cannot cure the jurisdictional defect by waiver or consent. Mrs. Crump's argument, and the dissent's assertion that because "Mr. Crump voluntarily and affirmatively engaged the Utah courts ... he waived any question regarding authority of the Utah courts to decide the issue ... and has thus waived any objection to the district court's authority to exercise its jurisdiction," is without merit. We have held that

while defects in personal jurisdiction can be waived, subject matter jurisdiction

goes to the very power of a court to entertain an action. *A lack of subject matter jurisdiction cannot be stipulated around nor cured by a waiver.* A lack of subject matter jurisdiction can be raised at any time and when subject matter jurisdiction does not exist, neither the parties nor the court can do anything to fill that void.

*Id.* (citations omitted) (emphasis added). The issue of waiver has been addressed by this court, *see id.,* by our supreme court, and by the federal courts of appeal. *See, e.g., McDougald v. Jenson,* 786 F.2d 1465, 1484–85 (11th Cir.), *cert. denied by Jenson v. McDougald,* 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986) (No waiver of jurisdictional defect in modification of child custody case even where father had consented to jurisdiction of Washington court, which court did not have jurisdiction); *A.J. Mackay Co. v. Okland Constr. Co., Inc.,* 817 P.2d 323, 325 (Utah 1991) ("[A]cquiescence of the parties is insufficient to confer jurisdiction on the court, and a lack of jurisdiction can be raised by the court or either party at any time."); *see also* Annotation, *Child Custody: When Does State That Issued Previous Custody Determination Have Continuing Jurisdiction Under Uniform Child Custody Jurisdiction Act (UCCJA) Or Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A,* 83 A.L.R.4th 742, 748 (1991) [hereinafter Annotation] (citation omitted) ("[S]ubject matter jurisdiction under [the relevant child custody statutes] cannot be vested by agreement of the parties, even though all of the parties desire an adjudication on the merits, and such jurisdiction cannot be conferred on the court by a party's failure to interpose a timely objection to the court's assumption of jurisdiction."). Therefore, we must determine if, under the applicable statutes, the courts of this state have jurisdiction to modify the Montana child custody award, and not ignore this issue on the

basis of waiver simply because Mr. Crump came to Utah to initiate the action.

### A. Jurisdiction under the PKPA

■ Congress adopted the Parental Kidnapping Prevention Act (PKPA), the jurisdictional provisions of which are codified at 28 U.S.C. § 1738A (1989), to create a national standard that the states could look to in interstate child custody disputes. *See generally* Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96–611, § 7, (1980), 94 Stat. 3569. The PKPA was created in part to solve problems that the Uniform Child Custody Jurisdiction Act (UCCJA) had not successfully addressed. *State in Interest of D.S.K.,* 792 P.2d 118, 128 (Utah App.1990) (citations omitted). "Where the PKPA and the state's version of the UCCJA conflict, the PKPA preempts state law." *Id.* (citations omitted). Because the PKPA "directly address the issues before this court, creates a very manageable two-prong test for determining modification jurisdiction, and would govern in the event of conflict with the UCCJA or other state law," *Curtis,* 789 P.2d at 720, we focus our analysis on this federal statute.[1]

One problem that the UCCJA failed to address was a specific provision for continuing jurisdiction. Annotation, 83 A.L.R.4th at 748.[2] Therefore, the potential existed for concurrent jurisdiction between two states. Dickens, *The Parental Kidnapping Act: Application and Interpretation,* 23 J.Fam.L. 419, 426–27 (1984–85) [hereinafter Dickens]. The PKPA eliminates "the possibility of concurrent jurisdiction by conferring exclusive modification jurisdiction upon the home state of the child (i.e., the state which rendered the initial decree)." *Id.* at 426 (citing *The Effect of the Parental Kidnapping Prevention Act of 1980 on Child Snatching,* 17 New Eng.L.Rev. 499, 511 (Spring 1982)).

Unlike the UCCJA, the PKPA "anchors *exclusive* continuing jurisdiction to modify

---

1. In the present case, the result is the same under the UCCJA and the PKPA, although the PKPA uses language more specific than the UCCJA in addressing jurisdiction in the modification context.

2. "However, the provisions of § 14 of the UCCJA, along with the Commissioners' Notes to that section, have been interpreted to establish exclusive continuing jurisdiction of the state that made the initial custody determination." Annotation, 83 A.L.R.4th at 748.

a previous custody decree in the original home state as long as the child or one of the contestants remains in that state." Annotation, 83 A.L.R.4th at 748 (emphasis added). *See also* Dickens, 23 J.Fam.L. at 426. "While under the UCCJA scheme some states profess to find *modification* jurisdiction so long as they can properly exercise *initial* custody jurisdiction, the PKPA prevents a second state from modifying an initial state's order except in carefully circumscribed situations." *Meade v. Meade,* 812 F.2d 1473, 1476 (4th Cir.1987). This is clear from section (f) of the PKPA which states that

> A court of a State *may modify a determination of the custody of the same child made by a court of another State,* if—
>
> (1) it has jurisdiction to make such a child custody determination; and
>
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C. § 1738A (1989) (emphasis added).

This section explicitly limits when a state, which would otherwise have jurisdiction over a child custody dispute, must defer to the state which originally issued the custody order.[3] "The PKPA is a departure from the jurisdictional requirements of the UCCJA and this departure is critical to the efficacy of the new Act because a state court may no longer modify existing decrees of other states pursuant to the various and flexible bases of jurisdiction provided in the UCCJA." Dickens, 23 J.Fam.L. at 426. Further, this court has held "the language [of the PKPA] clearly eliminates the possibility of concurrent jurisdiction by conferring exclusive jurisdiction upon the state which rendered the initial decree[.]" *State in Interest of D.S.K.,* 792 P.2d at 129. *See also* Dickens, 23 J.Fam.L. at 426–27 (PKPA precludes a state court from modifying existing decrees of other states when state which issued decree maintains jurisdiction).

In the present case, both prongs of the jurisdictional test must be addressed. While a state may "have jurisdiction to make such a child custody determination[,] . . ." 28 U.S.C. § 1738A (1989), it *must* decline to exercise that jurisdiction *unless* "the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." *Id.*[4] While Utah may have had jurisdiction to issue the original order in this case, e.g., meeting the requirements of subsection (1), Utah does not have jurisdiction to modify an order from Montana because Montana has continuing exclusive jurisdiction.

### B. Jurisdiction under the UCCJA

■ The decision we have reached conforms with comparable provisions of the UCCJA. The UCCJA was created to "avoid jurisdiction competition and conflict with courts of other states in matters of child custody," Utah Code Ann. § 78–45c–1 (1987), "promote cooperation with the courts of other states," *id.,*

> litigate custody where the child and family have the closest connections and where significant evidence concerning the child is most readily available, discourage conflict over custody, deter abductions and unilateral removals of children, avoid relitigation of another state's

**3.** Specifically the PKPA provides that states shall not modify custody orders of another state "except as provided in subsection (f) of this section," 28 U.S.C. § 1738A(a) (1989).

**4.** *See also Meade v. Meade,* 812 F.2d 1473, 1476 (4th Cir.1987) (Virginia trial court properly exercised jurisdiction over modification of custody case as Virginia had continuing and exclusive jurisdiction); *McDougald v. Jenson,* 786 F.2d 1465, 1481 (11th Cir.), *cert. denied by Jenson v. McDougald,* 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986) (no question that under PKPA, Florida, the state which issued initial custody decree, and not Washington, where mother and child later resided, maintained and properly exercised jurisdiction to modify custody decree); *Applegate v. Gant,* 460 So.2d 1293, 1294 (Ala.Civ.App.1984) (Alabama court had no jurisdiction to modify Texas custody decree where under PKPA state issuing original decree retains exclusive jurisdiction); *Tufares v. Wright,* 98 N.M. 8, 644 P.2d 522, 524 (1982) (PKPA precluded modification of Utah custody decree by New Mexico where first prong of test was met but second prong was not met).

custody rulings, and promote the exchange of information and mutual assistance between different states[,]

*State in Interest of D.S.K.*, 792 P.2d 118, 123 (Utah App.1990) (citing Utah Code Ann. § 78–45c–1 (1987)), or put more succinctly, "to bring some semblance of order into the existing chaos." Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam.L.Q. 203, 214 (1981) [hereinafter Bodenheimer] (quoting UCCJA, Commissioners' Prefatory Note, 9 U.L.A. 114 (1979)). All fifty states and the District of Columbia have adopted the UCCJA.

As to when a court in this state has jurisdiction over a particular child custody matter, Utah Code Ann. § 78–45c–3(1) (1987) provides:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

(a) This state (i) is the home state of the child at the commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (a), (b), or (c), or another has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

In the present case, under subsection (a), Utah is the home state [5] of the children. However, the analysis does not end at determining whether these jurisdictional requirements are met. Section 78–45c–14(1) (1987) [6] sets forth under what circumstances a court in Utah may modify an out-of-state custody decree:

(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that *the court which rendered the decree does not now have jurisdiction* under jurisdictional prerequisites substantially in accordance with this act *or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.*

(Emphasis added.) [7] Under this section, both the requirements of subsections (1)(a)

---

5. Utah Code Ann. § 78–45c–2 defines "home state" as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months...."

6. While this court has decided jurisdictional disputes under the UCCJA without regard to section 14, *see, e.g., Rawlings v. Weiner*, 752 P.2d 1327 (Utah App.), *cert. denied*, 765 P.2d 1278 (Utah 1988), we believe that such questions are more easily answered by focusing on this section. *See, e.g., Rawlings*, 752 P.2d at 1330–31 (Bench, J., concurring).

7. We note that subsection 14 contains language similar to that found in subsection (f) of the PKPA. While it was hoped that subsection 14 of the UCCJA would eliminate the erroneous assumption of concurrent jurisdiction, it proved to be an imperfect remedy. *Meade v. Meade*, 812 F.2d 1473, 1476 (4th Cir.1987); Bodenheimer, 14 Fam.L.Q. at 214. "While under the UCCJA scheme some states profess to find *modification* jurisdiction so long as they can properly exercise *initial* custody jurisdiction, the PKPA prevents a second state from modifying an initial state's order...." *Meade*, 812 F.2d at 1476.

and (b) must be met before Utah can modify a decree from another state. Section 15 provides that the second state will enforce the decree of the initial state as long as the initial state retains custody jurisdiction. "When both states have adopted the UCCJA, the apparent effect of §§ 14 and 15 is to give continuing exclusive jurisdiction to the initial state as long as that state retains a 'significant connection' basis for jurisdiction." *Meade v. Meade,* 812 F.2d 1473, 1476–77 (4th Cir.1987). It makes no difference that Utah may have met the jurisdiction prerequisites of section 3; section 14 must also be satisfied in order for this state to modify the Montana award.[8]

It is clear that in the case at bar, the requirement of subsection (1)(a) is not met.

> [T]he continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction.
>
> . . . .
>
> Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. *Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away*

*is deference to another state's continuing jurisdiction no longer required.*

Bodenheimer, 14 Fam.L.Q. at 214–15 (quoted in *State in Interest of D.S.K.,* 792 P.2d at 124) (emphasis added). *See also Rawlings v. Weiner,* 752 P.2d 1327, 1330–31 (Utah App.) (Bench, J., concurring), *cert. denied,* 765 P.2d 1278 (Utah 1988). "As long as the decree state retains jurisdiction there is no concurrent jurisdiction to modify a decree under the UCCJA," *State in Interest of D.S.K.,* 792 P.2d at 124 (citations omitted), and "as long as one parent continues to reside in the original state and maintains some contact with the child . . .[,]" *Id.* at 125, jurisdiction remains in the decree state.

Mrs. Crump's argument that jurisdiction automatically shifted to Utah, the new home state, when she and the children moved there, is without merit. Mr. Crump continues to reside in Montana, where the original custody decree was issued. Montana has not relinquished jurisdiction, nor have the parties sought to have Montana do so. Instead, Mr. Crump chose to petition the courts of Utah for a modification of custody.[9] Therefore, under the UCCJA, Montana has continuing exclusive jurisdiction and has not declined to exercise its jurisdiction in this case.

## CONCLUSION

While there is much confusion as to the applicability of the UCCJA and the PKPA

---

**8.** To read section 3 of the UCCJA, which merely addresses under what circumstances a state *may* have jurisdiction, without the qualifying language of section 14, as the dissent would have us do, is to ignore the plain language of the Act. Scholars addressing this very issue have commented that prior to the UCCJA, "concurrent jurisdiction in several states to modify an existing custody judgment was a major cause of parental resort to kidnapping to gain a more favorable judgment in a new forum." Bodenheimer, 14 Fam.L.Q. at 213–14. Therefore, section 14 is the key provision to carry out the UCCJA's objective of preventing jurisdictional conflict. *Id.* at 214. This is especially true, when as here, the question is not simply, does a particular state have jurisdiction to make a custody decree, but, does a particular state have jurisdiction to modify an existing custody decree of another state.

While section 14 was overlooked by early cases under the UCCJA, *see, e.g., Wheeler v.*

*District Court,* 186 Colo. 218, 526 P.2d 658 (1974), and *Howard v. Gish,* 36 Md.App. 446, 373 A.2d 1280 (1977), the majority of states, including Utah, now recognize the exclusive jurisdiction of the state which issued the original decree. *See, e.g., State in Interest of D.S.K.,* 792 P.2d at 128; *Curtis,* 789 P.2d at 724–25; *Rawlings v. Weiner,* 752 P.2d 1327, 1330–31 (Utah App.) (Bench, J., concurring), *cert. denied,* 765 P.2d 1278 (Utah 1988). The dissent however, chooses to ignore Utah case law, and relies instead upon cases from Indiana and Illinois to make the point that concurrent jurisdiction does exist.

**9.** The dissent correctly points out that had the "stay-at-home parent, of his or her own volition, moved from Montana, Utah would then be able to exercise its jurisdiction." However, it does not follow that "had the stay-at-home parent, of his or her own volition, never asserted his or her custody rights in Montana, Utah would also be able to exercise its jurisdiction."

in child custody modification proceedings, this is no excuse for counsel in these types of cases to totally ignore the law. In the present case, we have no choice but to dismiss the appeal because the courts of Utah do not have jurisdiction to modify the Montana decree. The dissent is disturbed that this result might require further proceedings. However, if the proper procedures had been followed at the outset, the dissent would have no basis for its complaint. Because the trial court lacked jurisdiction to modify Montana's custody decree, we dismiss the appeal.

GARFF, J., concurs.

RUSSON, Judge (dissenting):

I dissent. In my opinion, the Utah District Court did have jurisdiction in this matter and, further, had a right to exercise its jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA)[1] and the Parental Kidnapping Prevention Act (PKPA).

The majority opinion fails to adhere to the plain and unambiguous language of the UCCJA and the PKPA, as well as to their spirit and purpose, in its erroneous determination that the Utah District Court did not have jurisdiction to decide the matter that was before it.[2]

## I. BACKGROUND

Prior to the UCCJA, there was constant conflict between custody orders of states having concurrent jurisdiction. This usually occurred when one parent moved from the state which granted the divorce to a different state, and then filed an action in the second state for custody of the minor children. Where the children were present with that parent, either by visitation or by having been taken there, that state natural-ly had jurisdiction to deal with their custo-dy. If the decree entered was contrary to the decree of the original forum state, then the parties (and the courts) were faced with the problem of conflicting orders.

## II. JURISDICTION UNDER THE UCCJA

### A. Section 3 of the UCCJA[3]

To solve this problem, the UCCJA was proposed and has now been adopted in all fifty states and the District of Columbia. It specifically recognizes that two states may have simultaneous concurrent jurisdiction, but directs how such jurisdiction shall be exercised:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

---

1. In Utah, the UCCJA is set forth in Utah Code Ann. §§ 78–45c–1 to –26 (1987 and Supp.1991). At all times relevant to this case, the statutory language found in the 1987 version of the statute governs. For the sake of consistency and clarity, all sections of the UCCJA are cross-referenced to the corresponding sections as set forth therein.

2. In order to properly understand the state and federal responses to conflicts between states having concurrent jurisdiction, one must be aware that the UCCJA was first proposed in August 1968, while Congress did not enact the PKPA until December 1980. Accordingly, these two documents will be addressed chronologically.

3. Utah Code Ann. § 78–45c–3 (1987).

(c) The child is physically present in this state, and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

Utah Code Ann. § 78–45c–3 (1987). (emphasis added).

"Home state" is defined by the UCCJA to mean:

the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned.

Utah Code Ann. § 78–45c–2(5) (1987).

The operation of section 3[4] was explained by the drafters of the UCCJA, the National Conference of Commissioners on Uniform State Laws, as follows:

Paragraphs (1) and (2) of subsection (a)[5] establish the two major bases for jurisdiction. In the first place, a court in the child's home state has jurisdiction, and secondly, if there is no home state or the child and his family have equal or stronger ties with another state, a court in that state has jurisdiction. If this alternative test produces concurrent jurisdiction in more than one state, the mechanisms provided in sections 6[6] and

7[7] are used to assure that only one state makes the custody decision.

. . . .

Paragraph (2)[8] comes into play either when the home state test cannot be met or as an alternative to that test. The first situation arises, for example, when a family has moved frequently and there is no state where the child has lived for 6 months prior to suit, or if the child has recently been removed from his home state and the person who was left behind has also moved away. See paragraph (1),[9] last clause. *A typical example of alternative jurisdiction is the case in which the stay-at-home parent chooses to follow the departed spouse to state 2 (where the child has lived for several months with the other parent) and starts proceedings there.*

Uniform Child Custody Jurisdiction Act, Comment at 20–21 (1968) (emphasis added) (hereinafter Comment).

Thus, the plain language of section 3[10] and the comments thereto provide that State Two has jurisdiction if it meets one of the bases established in that section.

### B. Other Sections of the UCCJA

Moreover, if Utah Code Ann. § 78–45c–3 (1987) is construed otherwise, the remaining sections of the UCCJA fail to make sense wherein they require that State Two *shall stay proceedings* if the matter is pending in another state, Utah Code Ann. § 78–45c–6(3) (1987); or *may decline to exercise its jurisdiction* if the first state is a more appropriate forum, Utah Code Ann. § 78–45c–7 (1987); or *may decline to exercise its jurisdiction* if the petitioner is guilty of improper conduct, Utah Code Ann. § 78–45c–8(1) (1987); and *shall not exercise its jurisdiction* to modify unless the interest of the child necessitates, Utah Code Ann. § 78–45c–8(2) (1987). All of the foregoing are indicia of jurisdiction: If a

---

**4.** Utah Code Ann. § 78–45c–3 (1987).

**5.** Utah Code Ann. § 78–45c–3(1)(a)(i), (ii) (1987).

**6.** Utah Code Ann. § 78–45c–6 (1987).

**7.** Utah Code Ann. § 78–45c–7 (1987).

**8.** Utah Code Ann. § 78–45c–3(1)(a)(ii) (1987).

**9.** Utah Code Ann. § 78–45c–3(1)(a)(i) (1987).

**10.** Utah Code Ann. § 78–45c–3 (1987).

court does not have jurisdiction, it does not have the power to stay proceedings, nor the power to decline to exercise its jurisdiction, nor the power to proceed with the proceedings even if to do so would be in the best interest of the children's safety and well being. It would have no choice but to dismiss for lack of jurisdiction.

However, a court does have these choices because the UCCJA specifically confers jurisdiction on the second state where the child and a parent have been living for at least six consecutive months (home state), Utah Code Ann. § 78–45c–3(1)(a) (1987); or when it is in the best interest of the child to assume jurisdiction because the child and at least one parent have a significant connection with the second state and there is substantive evidence in that state pertaining to the child's care, protection, training and personal relationships, Utah Code Ann. § 78–45c–3(1)(b) (1987); or in the case of an emergency, Utah Code Ann. § 78–45c–3(1)(c) (1987); or when no other state has jurisdiction or another state has declined to exercise jurisdiction, Utah Code Ann. § 78–45c–3(1)(d) (1987).

### C. Utah Cases

The Utah Supreme Court's holding in *Tuttle v. Henderson*, 628 P.2d 1275 (Utah 1981) offers additional insight into the issue of concurrent jurisdiction under the UCCJA. In that case, the trial court acknowledged that it had jurisdiction, but refused to exercise it under the circumstances of that case. *Id.* at 1276. Although *Tuttle* is a pre-UCCJA case, the court quoted extensively from the UCCJA and found that the UCCJA provided persuasive authority to support its affirmance of the trial court's holding that it had concurrent jurisdiction. *Id.* at 1276–77.

Also instructive is the Utah Supreme Court's holding in *Coppedge v. Harding*, 714 P.2d 1121 (Utah 1985), a post-UCCJA case. In that case, an action was filed by the Coppedges in Oregon, to make them guardians of their grandson, who was living with them in Oregon. In response, a custody action by the child's parents was subsequently filed in Utah. The Utah Su-

preme Court ordered the district court "to stay the Utah action to the extent that it seeks to determine custody under the Uniform Act" and "to communicate with the Oregon Court ... to determine the propriety of further proceedings in Oregon." *Id.* at 1122. The district court was further instructed that "[i]n the event that the Oregon court stays its proceedings after such communication, then the Utah court may proceed to adjudicate the custody matter." *Id.* If Utah did not have jurisdiction, then the district court could not have been ordered to stay its proceedings nor to proceed after communicating with Oregon. On the other hand, if Oregon did not have jurisdiction, then the Utah Supreme Court would have simply concluded such and ordered the district court to proceed. The only conclusion that can be drawn from this case is the existence of concurrent jurisdiction. *See also State in Interest of W.D. v. Drake*, 770 P.2d 1011, 1013 (Utah App. 1989) (under the facts of that case, Utah and California had concurrent jurisdiction); *Rawlings v. Weiner*, 752 P.2d 1327, 1331 (Utah App.) (Bench, J., concurring) (under the facts of that case, Utah had primary jurisdiction and Washington had secondary jurisdiction), *cert. denied*, 765 P.2d 1278 (Utah 1988).

### III. EXERCISE OF JURISDICTION

Once the jurisdictional requirements of the UCCJA have been met, our inquiry then turns to the *exercise* of that jurisdiction. Just because a state has jurisdiction does not mean that it can *exercise* it as to custody. State Two "shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning custody of the child was pending in a court of another state exercising jurisdiction...." Utah Code Ann. § 78–45c–6(1) (1987). In such case, State Two "shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum...." Utah Code Ann. § 78–45c–6(3) (1987). Secondly, a court may decline to exercise its jurisdiction if it finds that it is an inconven-

ient forum. Utah Code Ann. § 78–45c–7(1) (1987). Thirdly, where State Two has jurisdiction, it generally cannot modify the custody decree of State One *unless* it appears to the court of State Two that State One "does not now have jurisdiction under jurisdictional requirements substantially in accordance with [the UCCJA] or has declined to assume jurisdiction[.]" Utah Code Ann. § 78–45c–14(1)(a) (1987).[11] Thus, even if jurisdiction is established under Utah Code Ann. § 78–45c–3 (1987), Utah Code Ann. §§ 78–45c–6, –7, and –14 (1987) govern the *exercise* of that jurisdiction.

However, if both parents and the children move from the state of the original decree, deference to that state's jurisdiction is no longer required. *State in Interest of D.S.K.*, 792 P.2d 118, 124 (Utah App. 1990) (citing Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam.L.Q. 203, 214–15 (1981)). As the drafters' comment to section 14[12] states:

> Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. See *People ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903 [91 L.Ed. 1133] (1947). In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of the Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3.[13] The fact that the court had previously considered the case may be one factor favoring its continued

jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. Compare Ratner, *Child Custody in a Federal System*, 62 Mich. L.Rev. 795, 821–22 (1964).

> For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6½ months (3½ months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the "home state" of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law. See Clark, *Domestic Relations* 322–23 (1968).

Comment at 32.

Additionally, if the stay-at-home parent fails to assert his or her custody rights, then State One's jurisdiction ceases:

> [I]f the father in the same case continued to live in state 1, but let his wife keep the children for several years without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease. Compare *Brengle v. Hurst*, 408 S.W.2d 418 (Ky.1966).

*Id.*

## IV. APPLICATION TO THE CASE AT BAR

Applying the foregoing to the case at bar, there is no question but that the Utah District Court has jurisdiction under the plain language of the UCCJA. Utah is the home state of the children because they have lived here with their mother for over two years, substantially longer than the six

---

11. State Two may nonetheless proceed with matters other than custody. As stated in Utah Code Ann. § 78–45c–7(6) (1987), "[t]he court may decline to exercise its jurisdiction under this act if a custody determination is incidental to an action for divorce on another proceeding while retaining jurisdiction over the divorce or other proceedings."

12. Utah Code Ann. § 78–45c–14 (1987).

13. Utah Code Ann. § 78–45c–3 (1987).

months required by the UCCJA. *See* Utah Code Ann. § 78–45c–3(1)(a) (1987). Furthermore, the children and Mrs. Crump have significant connection with Utah and substantial evidence exists in Utah concerning their training, care, protection and personal relationships. *See* Utah Code Ann. §§ 78–45c–1(1)(c), –3(1)(b) (1987). "Where the statutory language is plain and unambiguous, [appellate courts] will not look beyond to divine legislative intent. Instead, we are guided by the rule that a statute should be construed according to its plain language." *Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988) (citation omitted). Thus, we should hold that according to the plain language of section 78–45c–3, the Utah district court and this court have jurisdiction to hear this case.

Furthermore, although Mr. Crump has continued to live in Montana, he came to Utah, docketed the Montana judgment in Utah, petitioned the Utah Court to modify the Montana decree, and then appealed that judgment to this court. The Utah District Court had before it the children and mother who had lived in Utah for over two years, and the father who petitioned the Utah court seeking to modify the Montana custody decree. Such a scenario was the subject of the drafters' comment to section 3,[14] wherein it stated: "A typical example of alternative jurisdiction is the case in which the stay-at-home parent chooses to follow the departed spouse to state 2 (where the child has lived for several months with the other parent) and starts proceedings there." Comment at 21. That is exactly what we have in this case: Mr. Crump (stay-at-home parent) chose to follow Mrs. Crump (departed spouse) to Utah (where the children have lived for over two years with their mother) and commence proceedings in Utah. This offers further support for concluding that the district court had jurisdiction to hear this case.

**14.** Utah Code Ann. § 78–45c–3 (1987).

**15.** Although *Williams* concerns an initial custody determination, rather than modification of custody, it is nonetheless persuasive because the

Having found that the jurisdictional requirements of the UCCJA have been met, our inquiry turns to whether or not the Utah court could *exercise* its jurisdiction. As noted above, if Mr. Crump had, of his own volition, moved from Montana, Utah would then be able to exercise its jurisdiction. Also, if Mr. Crump, of his own volition, had never asserted his custody rights in Montana, Utah would then be able to exercise its jurisdiction. The question which remains for us is whether Utah should be able to exercise its jurisdiction when Mr. Crump, of his own volition, chooses to follow Mrs. Crump to Utah and bring suit here.

This very question was answered in *Williams v. Williams*, 555 N.E.2d 142 (Ind. 1990).[15] In that case, the father lived in Indiana with one child and the mother lived in Illinois with the other child. She filed a petition in Indiana for custody of both children. The Indiana court awarded custody of both children to the father. The mother appealed, and the Indiana Court of Appeals reversed the trial court, holding that because Illinois was the home state of the one child, Indiana lacked jurisdiction under the UCCJA to deal with custody.

The Supreme Court of Indiana reversed the court of appeals, stating:

> Once a court possesses subject matter jurisdiction to consider the general class or kind of case, its specific jurisdiction over a particular case within the general class is subject to waiver. In [*State ex rel. Hight v. Marion Superior Court*, 547 N.E.2d 267, 270 (Ind.1989)] we observed:
>
> > Ind.Code § 31–1–11.5–3(a) and (b) empower a trial court to hear causes of action for dissolution and for child support.
> >
> > Within this grant of subject matter jurisdiction is the power to determine child support. (Ind.Code § 31–1–11.5–12), child custody (Ind.Code § 31–1–11.5–20), and visitation (Ind.Code § 31–

UCCJA establishes the same jurisdictional standards for child custody determinations by initial or modification decree. *See* Utah Code Ann. § 78–45c–3(1) (1987).

1–11.5–24). By filing the dissolution action, [the wife] engaged the trial court's subject matter jurisdiction to hear dissolution cases, which includes the authority to decide issues of child support and visitation.

. . . .

Resolution of the subject matter jurisdiction issue involves determining whether the claim advanced falls within the general scope of authority conferred upon the court by the constitution or statute. The authority to hear child custody cases is not directly granted by the UCCJA. Rather, Sec. 3(a) merely operates to restrict the existing power of courts to hear custody cases. Ind.Code § 31–1–11.6–3(a) begins:

A court of this state *which is competent to decide child custody matters* has jurisdiction to make child custody determination by initial remodification decree if: [emphasis added]

The source of this competency to decide child custody matters is found in Ind. Code § 31–1–11.5–20 and is an incidental grant of specific authority within the general grant of subject matter jurisdiction to hear actions for dissolution and child support. The jurisdictional limitations imposed by the UCCJA are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case. This exercise of authority is waivable.

*Because of the voluntary conduct of Bonnie in affirmatively engaging the Indiana courts to determine custody, and expressly consenting to the trial court's authority to determine custody, we find that she has waived any question regarding the authority of the court to decide the issue of custody under the facts of her case and has thus waived the trial court's jurisdiction over her particular case.*

*Id.* at 144–45 (emphasis added) (citations omitted).

Also persuasive is the Indiana Court of Appeals' holding in *Schneider v. Schneid-er,* 555 N.E.2d 196 (Ind.App.1990). In circumstances similar to those in the case at bar, the court held that under the UCCJA, Indiana had jurisdiction to modify a Wisconsin custody decree because the stay-at-home parent "voluntarily submitted himself to the trial court's jurisdiction," *id.* at 199, thereby raising an inference that the parties considered Indiana to be the more appropriate forum. *Id.*

In the present case, this court raised sua sponte an objection to jurisdiction, and now bases its decision on a lack thereof. Instead, we should infer from Mr. Crump's decision to come to Utah, docket the Montana judgment here, petition the Utah Court to modify the Montana decree, and then appeal that judgment to this court, that the parties before us consider Utah the more appropriate forum in which to litigate this action. *See also In re Marriage of Slate,* 181 Ill.App.3d 110, 129 Ill. Dec. 844, 536 N.E.2d 894 (1989) ("Under the UCCJA, jurisdiction refers not to the due process limitations of potential subject matter or personal jurisdiction, but instead to the legislature's discretionary limitation upon the *exercise of existing jurisdiction.* Thus the Act permits some discretion in the trial court's determination of its jurisdiction to ensure that jurisdiction takes place in the forum where the ties between the State and the child and his family are the closest." *Id.* 129 Ill.Dec. at 846, 536 N.E.2d at 896 (emphasis added) (citations omitted)); *In Re Marriage of Weinstein,* 87 Ill.App.3d 101, 42 Ill.Dec. 243, 408 N.E.2d 952 (1980) ("[W]here both prospective custodians are present in a state and there is an opportunity for a full hearing on the custody issue, the jurisdictional requirements of the Uniform Act may be satisfied." *Id.* at 956 (citing Bodenheimer, *The Uniform Child Custody Jurisdiction Act,* 22 Vand.L.Rev. 1207, 1229 (1969)).

In our case, the district court was competent to decide child custody matters under Utah Code Ann. § 78–3–4(1) (Supp.1991) ("The district court has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law."); Utah Code Ann. § 30–3–1(1) (1989) ("Proceedings in divorce are com-

menced and conducted as provided by law for proceedings in civil causes, except as provided by this chapter."); and Utah Code Ann. § 30-3-1(5)(d) (1989) ("In all actions the court and the judge have jurisdiction over ... the custody and maintenance of minor children[.]"). *See also* Utah Const. art. VIII, § 5. Moreover, Utah has jurisdiction to make child custody determinations under Utah Code Ann. § 78-45c-3 (1987). Since Mr. Crump voluntarily and affirmatively engaged the Utah courts to modify the Montana decree, in doing so he waived any question regarding authority of the Utah courts to decide the issue under the facts of this case and has thus waived any objection to the district court's authority to exercise its jurisdiction over this particular case.

Furthermore, the majority opinion misconstrues the plain language of Utah Code Ann. § 78-45c-14(1) (1987) in reaching its erroneous conclusion that the said section strips Utah courts of jurisdiction. Utah Code Ann. § 78-45c-14(1) (1987) provides:

> If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

The plain language of this section recognizes that both states can have concurrent jurisdiction: Montana has jurisdiction because it made the custody decree, and unless Utah also has jurisdiction under another section of the act, subsection (b) above is meaningless. Thus, it is clear that this section does not contain qualifying language that strips Utah courts of jurisdiction, but instead addresses the *exercise* of that jurisdiction.[16]

Although the majority opinion correctly states that acquiescence of the parties is insufficient to confer jurisdiction on the court, such is inapplicable here. The parties are not purporting to confer jurisdiction upon the Utah courts. As shown above, Utah already had jurisdiction under Utah Code Ann. § 78-45c-3 (1987). By coming to Utah, docketing the Montana judgment here, petitioning the Utah District Court to modify the Montana custody decree, and appealing that judgment to this court, Mr. Crump did not purport to waive Montana's jurisdiction, but simply waived any objection to Utah's authority to exercise its jurisdiction.

## V. JURISDICTION UNDER THE PARENTAL KIDNAPPING PREVENTION ACT

Nor is Utah's jurisdiction prohibited under the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1991). In fact, both the plain language of the statute and its spirit and purposes support the conclusion that Utah has jurisdiction. Subsection (f) of 28 U.S.C. § 1738A (1991) contains language similar to that found in Utah Code Ann. § 78-45c-14(1) (1987).[17] Subsection (f) provides:

> A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
>
> (1) it has jurisdiction to make such a child custody determination; and
>
> (2) the court of the other state no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

As is the case with section 78-45c-14, this section does not strip Utah courts of juris-

---

**16.** Additionally, it should be noted that the Utah district court did *not* modify the Montana decree as to custody. While the Utah court had jurisdiction to modify the Montana custody decree, it chose not to because there had not been a substantial change of circumstances.

**17.** Utah Code Ann. § 78-45c-14(1) (1987) provides:

> If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

diction, but merely addresses the *exercise* of that jurisdiction. The majority opinion acknowledges as much wherein it states that the jurisdictional prerequisites of subsection (1) have been met. Nonetheless, the majority opinion then seems to contradict itself by reaching the conclusion that despite the fact that subsection (1) has been met, the Utah courts do not have jurisdiction.

Secondly, an examination of the purposes of the act support Utah assuming jurisdiction under the circumstances of this case. Those purposes include: (1) deterring interstate abductions, (2) determination of custody by the state which can best decide the case in the interest of the child, (3) facilitating the enforcement of custody decrees of sister states, and (4) promotion of greater stability of home environment. *See generally* Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96–611, § 7, 94 Stat. 3569 (1980). First, the case at bar does not concern a parent that has abducted a child and moved elsewhere to find a more favorable forum. Instead, we have a very different scenario in which the stay-at-home parent has affirmatively chosen to follow the departed spouse to the home state of the children and bring suit there. Secondly, as discussed above, since Mrs. Crump and the children have lived in Utah for over two years, Utah is in the best position to decide the case in the interest of the children. Thirdly, since the Utah District Court did not modify the custody portion of the Montana decree, its decision does facilitate enforcement of that decree. Lastly, rather than promoting greater stability of home environment, the majority opinion instead promotes the excessive litigation that the act was created to curb.

## VI. CONCLUSION

I would hold that the trial court had jurisdiction, as well as the right to exercise its jurisdiction in this matter. Accordingly, I would hold that this court has jurisdiction

18. While the result in this case in no way compels either party to petition for certiorari in Utah, or modification in Montana, resolution of this controversy may require such. This possi-

to hear the appeal, and that the matter should proceed on appeal.[18]

bility is particularly disturbing in light of the fact that the children have already appeared twice before judges in two states.